STATE BOARD OF TAX COMMISSIONERS ET AL. *v.* CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY.

[No. 17,978. Filed January 26, 1951. Rehearing denied April 11, 1951. Transfer denied May 22, 1951.]

304

*J. Emmett McManamon,* Attorney General; *Earl R. Cox* and *Norman J. Beatty,* Deputy Attorneys General; *Winslow Van Horne* (of counsel), of Auburn, for appellants.

*T. Harlan Montgomery,* of Seymour, *O. G. Edwards,* of Chicago, Ill., and *Bert Beasley,* of Indianapolis, for appellee.

CRUMPACKER, J.—After due hearing the appellants, as the State Board of Tax Commissioners, fixed the value of the appellee's property in Indiana, for the purpose of taxation as of March 1, 1944, in the sum of $4,936,106. In all respects agreeable to the provisions of Burns' 1943 Replacement, § 64-1020, the appellee appealed from such action to the Jackson Circuit Court where it filed a complaint alleging that said assessment constitutes a constructive fraud upon it in that the same is (1) grossly excessive, (2) the result of the application of fundamentally erroneous principles of assessment, and (3) is arbitrary and capricious. Except for the evidence the appellants certified to said court a complete transcript of its proceedings in the matter and the appellee thereupon answered under Rule 1-3. Upon the issues thus joined the court heard evidence de novo, found that said assessed valuation of $4,936,106 "was arrived at by said Board by a method that was arbitrary, unlawful, capricious and based upon fundamentally erroneous principles, thereby resulting in a grossly excessive assessment and that the same was constructively fraudulent, wrongful and illegal and is null and void." Judgment went accordingly and the appellants' subsequent motion for a new trial was denied.

The parties are in controversy over the manner in which this court should approach the questions it has for determination. The appellants contend that their action in fixing the valuation of the appellee's property for the purpose of taxation was that of an administrative board and the only function the Jackson Circuit Court had was to determine whether the board's proceedings followed the statute and, if so, is its decision reasonable and not fraudulent, arbitrary or capricious. That the procedure before the board is not challenged as to regularity; there is ample evidence to support its

action and therefore the Jackson Circuit Court could have arrived at its decision only through a fact finding process which was an administrative function in which it did not have the power to indulge. Hence its decision, is contrary to law. On the other hand the appellee insists that the statute provides: "Such appeal (to the Jackson Circuit Court) shall be tried by the court without the intervention of a jury, and said trial of such issue shall be governed by the laws governing civil actions." That the case was so tried, the court found the board's action to be constructively fraudulent, arbitrary and capricious and, there being evidence to support such finding, this court is powerless to intercede in the absence of error otherwise.

After having concluded that the decision of the State Board of Tax Commissioners in making assessments in the manner provided by law and within the scope of its authority is final except under circumstances where relief may be granted by the courts, the Supreme Court, in *Peden et al.* v. *Board of Review of Cass County* (1935), 208 Ind. 215, 195 N. E. 87, said: "Under what circumstances may relief be granted by the courts in the assessments fixed by an assessor, the county board of review or the state board of tax commissioners? Relief may be had if fraud is shown on the part of any of the parties in fixing the value; if it is shown that it was not honestly appraised, but the value was fixed arbitrarily and capriciously, and not in proportion to other property of like character and situation. . . . All of the above illustrations would call for judicial action, and could be brought before the courts in a proper proceeding, *although there had been no statute authorizing an appeal.*" (Our emphasis). See also *Shideler, Auditor* v. *Martin* (1922), 192 Ind. 574, 136 N. E. 1, 137 N. E. 528. It would seem from this holding that where an

assessment is attacked for fraud or because it is arbitrary and capricious, and no question of jurisdiction or procedural regularity is involved, the statute is merely declaratory of a pre-existing common law right and the case should be tried and determined as any other civil matter of similar nature. This contemplates the introduction of evidence bearing on those issues, a finding of facts by the court and judgment accordingly. *Smith* v. *Lippman* (1944), 222 Ind. 261, 53 N. E. 2d 157. On an appeal from such judgment we are bound by the facts found by the court below if there is any substantial evidence to support them.

An understanding of the question with which we are concerned requires a brief description of the appellee's property upon which the valuation in controversy was assessed. The Chicago, Terre Haute & Southeastern Railroad Company owns a line of railroad extending from Chicago Heights, Illinois, south to Danville, Illinois, and from there southeasterly into Indiana through Terre Haute, Linton, Bedford and Seymour to its southern terminal at Westport. A branch line extends from Latta to Sullivan. The line from Chicago Heights to Westport is approximately 298 miles in length and that from Latta to Sullivan about 14 miles. Of the total main and secondary track mileage of the Chicago, Terre Haute & Southeastern Railroad Company approximately 197 miles lie in Indiana to which there is appurtenant 161 miles of side track. All of the property of this railroad was leased to the appellee in 1921 for a term of 999 years. By the terms of such lease the appellee agreed to assume and pay the principal and interest on the outstanding securities of the lessee, to pay its taxes and cash annually in the sum of not to exceed $12,000 to cover the expense of maintaining the corporate organization of the lessee. The main line of this railroad from Chicago Heights to Terre Haute is

paralleled on the west by the Chicago & Eastern Illinois Railroad and on the east by the New York Central. It passes through no large cities and performs no important local service, operating but one passenger train a day, from Terre Haute to Bedford and return. Its principal function is carrying coal mined along its rails in Indiana which approximated four million tons in 1943. A large part of this coal was used by the appellee in the operation of its railroad system and the balance was delivered to consignees along its lines. In 1943 the Chicago, Terre Haute & Southeastern Railroad Company had outstanding bonds and other obligations totaling $21,928,800 which, under the terms of the above lease, were guaranteed by the appellee.

The Chicago, Milwaukee, St. Paul and Pacific Railroad Company, the appellee herein, is a Wisconsin corporation owning and operating a system of railroads in 14 states. The average ratio between this system as a whole and that portion thereof in Indiana, based on track mileage, depreciated cost of reproduction, car and locomotive miles including work trains, revenue tons and passenger miles, and gross operating revenues, is 2.090%.

The fundamental question presented by this appeal is whether or not there is substantial evidence in the record to sustain the court's finding that a valuation of that portion of the appellee's property located in Indiana, in the sum of $4,936,106, is so grossly excessive as to constitute an arbitrary and capricious act on the part of the appellants amounting to constructive fraud. In determining this question we can consider only the evidence most favorable to the appellee. *Brown* v. *Brown* (1933), 205 Ind. 664, 665, 187 N. E. 836, and cases cited. Arbitrary or capricious action on the part of an administrative board means

willful and unreasonable action, without consideration and in disregard of the facts or circumstances of the case; action taken without some basis which would lead a reasonable and honest man to such action. *Sacharoff* v. *Murphy* (1943), 44 N. Y. S. 2d 117; *In Re Emp. Buffelen Lbr. & Mfg. Co.* (1948), 32 Wash. 2d 205, 201 P. 2d 194. It is also the law that an assessment by the State Board of Tax Commissioners may be so grossly excessive as to compel the conclusion that the valuation was arrived at by the use of fundamentally erroneous principles and by a method which was arbitrary and capricious and not the result of the exercise of a proper judgment and reasonable discretion. *Johnson* v. *Wells Fargo & Co.* (1915), 239 U. S. 234, 60 L. Ed. 243; *United States* v. *Osage County* (1919), 251 U. S. 128, 64 L. Ed. 184; *Great Northern Ry.* v. *Weeks* (1936), 297 U. S. 135, 80 L. Ed. 532.

The appellee's case rests upon evidence tending to prove that the appellants arrived at a figure of $4,936,-106, as a proper valuation of the property involved, by taking the cost of reproduction less depreciation, of the lines in Indiana, as reported to the Interstate Commerce Commission, in the sum of $11,522,100. To this was applied an equalization factor of 50% on the theory that property of this character is customarily assessed at about one-half of its actual cash value. This left a figure of $5,761,050 from which the value of properties in the state, as fixed by local assessors at $275,740, was deducted, leaving a balance of $5,485,310. For reasons not appearing this balance was still further reduced by 10% and the amount thus derived in the sum of $4,936,106 was determined to be the value of the appellee's propery in Indiana subject to taxation for the year 1944. Nowhere in the record do we find evidence to the effect that depreciated reproduction

cost is not a proper factor for consideration in determining the value of railroad property. Nor do we find any evidence to the effect that the appellants used that factor to the exclusion of all others in reaching a decision. The nearest approach to any such proof is the statement of one Floyd Williams, an expert in the matter of the valuation of railroad properties, that he knows of no recognized established method, generally employed for such purposes, that would have resulted in the assessed valuation fixed by the appellants in the sum of $4,936,106 and that the method he would have used, in vogue in 14 states and generally recognized as correct and proper, would have produced a top figure of $2,962,937.

It is generally recognized that a taxpayer is not entitled to relief in this type of litigation simply because the value of his property would be fixed substantially lower if computed by a different method even if the court thought such method to be preferable to the one adopted by the taxing authority, *Edison California Stores* v. *McColgan* (1947), 30 Cal. 2d 463, 176 P. 2d 697, 183 P. 2d 22; *Southern Ry Co.* v. *Watts* (1923), 260 U. S. 519, 527, 67 L. Ed. 375, nor is such taxing authority obliged to use any particular method of valuation or base its valuation on any particular facts if its ultimate action is not fradulent, capricious or arbitrary. *Southern Ry. Co.* v. *Watts, supra.*

Burns' 1943 Replacement, § 64-103, provides as follows: "All property within the jurisdiction of this state, not expressly exempted, shall be subject to taxation. All property of every kind and nature both real and personal and wherever situate, owned or possessed, and subject to taxation within the state of Indiana, shall be assessed and valued

for taxation purposes, at a rate which is uniform and equal and on a just valuation basis and at the true cash value as determined by the cost price, book value, the earning capacity of such property, replacement cost, depreciation, if any, and all other facts and circumstances which may give any information concerning such valuation, as of the first day of March in each year in which it is subject to assessment and valuation for taxing purposes." Whether the terms of this statute concerning the factors to be considered in fixing value are mandatory, as contended by the appellants, or merely directory, as urged by the appellees, certainly action by the taxing authority predicated thereon cannot be characterized as arbitrary and capricious. The first factor in fixing value mentioned by the statute is cost price. In this connection the appellants had before them the Chicago, Terre Haute & Southeastern Railroad Company's balance sheet of December 31, 1943, showing the cost of the road, equipment, and miscellaneous physical properties in the sum of $27,370,262. Earning capacity of the appellee's lines in Indiana, another statutory factor, is reflected by its report to the appellants of a net operating income for the year 1943 of $1,862,454 which, if capitalized at 6%, would result in a value of $31,040,900. A third factor mentioned by the statute is replacement costs less depreciation which the parties stipulated to be $11,522,100. The appellants had all these factors before them when they determined the valuation in controversy and the mere fact that the figure arrived at is the same as that which would have resulted through the application of the depreciated replacement cost method alone, is not sufficient to show that the appellants did not consider such other factors. A case in point is *J. B. Inderrieden Co.* v. *Lindheimer* (1939), 370 Ill. 316, 18 N. E. 2d

881. Under the statutes of Illinois and the rules of its State Tax Commission a consideration of four factors is required in fixing an assessment, to-wit: (1) Stock and bond value; (2) book value; (3) prior tax data; and (4) other obtainable information. The assessor fixed the value of the taxpayers' property in the exact amount of the net credit as shown on his balance sheet. The court held that this evidence, of and in itself, was not sufficient to show that the assessor did not consider the other factors and only a knowing and intentional disregard of the legally adopted factors of valuation would constitute constructive fraud. There being no proof to the contrary in the present case, we are bound to presume that the appellants considered the statutory factors of valuation, in the light of the evidence they had at hand, in arriving at their ultimate finding. *City of Jeffersonville* v. *Louisville, etc., Bridge Co.* (1908), 169 Ind. 645, 661, 83 N. E. 337. This being true proof that some other recognized method of valuation, evidently not used by the appellants, would have resulted in a much lower assessment is not substantial evidence of arbitrary and capricious action. *Edison California Stores* v. *McColgan, supra; Southern Ry. Co.* v. *Watts, supra.*

Judgment reversed and cause remanded with instructions to sustain appellants' motion for a new trial.

NOTE.—Reported in 96 N. E. 2d 279.